Damon C. Elder, OSB No. 085313
Email: damon.elder@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
1301 Second Avenue, Suite 3000
Seattle, WA 98101-3808
(206) 274-6400 | Phone

Troy S. Brown, *Admitted Pro Hac Vice*
Email: troy.brown@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
2222 Market Street
Philadelphia, PA 19103-3007
(215) 963-5214 | Phone

Scott L. Mullins, OSB No. 142504
**Mullins Law Office, LLC**
1000 SW Broadway St., Suite 2300
Portland, Oregon 97205
(971) 383-1315 | Phone
scott@slmullins.com

*Attorneys for Defendant WS Acquisition, LLC*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| SIEMENS MEDICAL SOLUTIONS USA, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>WS ACQUISITION, LLC dba WESTERN SHELTERS SYSTEMS an Oregon limited liability company,<br><br>Defendant. | Case No. 6:23-cv-01882<br><br>**DEFENDANT WS ACQUISITION, LLC'S MOTION TO DISMISS**<br><br>**ORAL ARGUMENT REQUESTED** |

## I.  LOCAL RULE 7-1 CERTIFICATION

In compliance with LR 7-1, the undersigned counsel for Defendant WS Acquisition, LLC, d/b/a Western Shelters Systems ("WSS" or "Defendant") certify that prior to filing this motion, counsel conferred by video conference with counsel for Plaintiff Siemens Medical Solutions USA, INC.'s ("Plaintiff") on March 6, 2024, regarding the matters in this motion, including the claims and defenses at issue. Despite these efforts, the parties have been unable to resolve the conflicts at issue in this motion.

## II.  INTRODUCTION & RELIEF REQUESTED

Plaintiff's Complaint asserts a single breach of contract claim against WSS premised on the allegation that WSS failed to perform under the terms of a "Term Sheet" and related purchase orders. But under the express language of the operative Term Sheet, Dkt. 1-3, Plaintiff's claim fails as a matter of law. The Term Sheet explicitly states that, "[u]ntil any [] Subcontract is executed, either party may discontinue discussions or negotiations regarding the Subcontract at any time with no resulting liability[.]" And Plaintiff admits that no Subcontract was ever executed, Compl. at ¶¶ 30-38, which definitively establishes that WSS had the right to "discontinue discussions or negotiations" with Plaintiff at any time, as a matter of law, with "no resulting liability." The Court should enforce the express provision that allowed either party to walk away with no liability at any time before a Subcontract was executed and dismiss Plaintiff's Complaint with prejudice.

## III.  RELEVANT FACTUAL ALLEGATIONS

For purposes of this motion, WSS relies solely on the allegations in the Complaint and the exhibits attached thereto. WSS reserves the right to dispute Plaintiff's allegations at an appropriate time.

A.  **The Parties Sign the Teaming Agreement to Prepare a Bid for the RFO.**

On December 14, 2017, the United Stated Department of Defense ("DoD") issued a Request for Offer (the "RFO") to solicit bids from manufacturers to supply the government with computer tomography scanners ("CT Scanners") mounted in containers for the armed forces. Compl. at ¶ 1. Following the release of the RFO, the parties began negotiations for a potential partnership in pursuing the RFO. *Id*. at ¶ 16.

On March 1, 2018, the parties executed a Teaming Agreement[1] under which the parties would work together to bid for the RFO. *Id*. at ¶ 17; Dkt. 1-2. The envisioned partnership involved WSS integrating Plaintiff's CT Scanners into its shipping containers ("integrated units"), while Plaintiff would submit the proposal to DoD. Compl. at ¶ 17; Dkt. 1-2 at 2.

The Teaming Agreement defined the parties' responsibilities for the planned proposal for the RFO. Dkt. 1-2 at 2. It also outlined the planned partnership between the parties if Plaintiff was awarded the contract with DoD. *Id*. at 2. The Teaming Agreement outlined that Siemens would send purchase orders to WSS for integrated units and that:

> Terms and conditions of any future purchase order issued by Siemens to [WSS] will be subject to the terms and conditions of a Subcontract to be negotiated by the parties.

*Id*. at 1. And importantly, the Teaming Agreement made clear that:

> [N]either party shall have any right to any reimbursement, payment, or compensation of any kind from each other during the period between the effective date of this Teaming Agreement and the execution of [the] Subcontract.

*Id*. at 1. As part of that process, the Teaming Agreement also stated that a "term sheet with key terms and conditions of a Subcontract will be negotiated concurrently[.]" *Id*. at 1. Finally, The Teaming Agreement was effective until a contract award was made under the RFO. *Id*. at 1.

---

[1] Plaintiff attached the "CONTRACTOR TEAMING ARRANGEMENT (CTA)" ("Teaming Agreement") and "CONFIDENTIAL SUMMARY OF TERMS FOR PROPOSED INTEGRATOR SERVICES FOR DLA DEPLOYABLE CT PROJECT" (the "Term Sheet") to its Complaint. Dkts. 1-2; 1-3.

PAGE 3 – DEFENDANT WS ACQUISITION, LLC'S MOTION TO DISMISS

**B.      The Parties Sign the Term Sheet Agreeing Not to Be Bound Until a Subcontract is Executed.**

On March 6, 2018, the parties agreed to the Term Sheet. Compl. at ¶ 18; Dkt. 1-3. Consistent with the Teaming Agreement, the Term Sheet made clear that if Plaintiff was awarded the RFO, then the ultimate terms between the parties were to be determined in a final executed Subcontract. Dkt. 1-3. Significantly, the first line of the Term Sheet expressly stated that it was intended solely for "*subcontract negotiation purposes*[.]" *Id*. at 1 (emphasis added). The Term Sheet also clearly stated that:

> This Term Sheet is **non-binding on either party**, except for the section below which is designated as binding.  Following, the award of a purchase order to Siemens for the Project that requires the Deliverables, the parties hereby agree to negotiate in good faith and execute a formal agreement for a fixed price subcontract ("Subcontract") containing all final and binding commitments, terms and conditions regarding the Project.

Dkt. 1-3 at 1 (emphasis added).

Even more significantly, the Term Sheet stated that:

> The parties hereby acknowledge that the terms and conditions of this Term Sheet are acceptable as a basis for negotiating a Subcontract. . . . **Until any such Subcontract is executed, either party may discontinue discussions or negotiations regarding the Subcontract at any time with no resulting liability.**

*Id*. at 3 (emphasis added).

Like the Teaming Agreement, the parties made their intent plain on the face of the Term Sheet—the parties would negotiate purchase orders "*pursuant to the terms of the Subcontract*" after the Subcontract was executed. *Id*. at 1.

The Term Sheet contained a section labeled "binding," but the Term Sheet made clear that those terms would only become binding terms in a future Subcontract; they were not immediately binding duties on either party. *Id*. at 2 ("Siemens and [WSS] will agree on certain Subcontract terms as follows . . ."). Further, some of these terms were subsequently amended in addendums to the Term Sheet prior to Plaintiff being awarded the DoD contract. *See* Compl. at ¶¶ 19, 21; Dkts. 1-4; 1-5.

C.   **More Than One Year Later, DLA Awards Siemens the Contract and the Parties Begin Negotiating a Subcontract, but Plaintiff Terminates the Relationship.**

On May 6, 2019, more than one year after the Term Sheet was executed, DoD awarded Siemens the contract. Compl. at ¶ 22. While Plaintiff began issuing purchase orders, the parties had yet to agree on a definitive Subcontract. *Id*. at ¶¶ 30-38. The parties began negotiating the Subcontract in May 2019, *id*. at ¶ 31, and continued through December 2019. *Id*. at ¶¶ 30-38. Ultimately, however, no Subcontract was ever executed. Therefore, by the express terms of the Term Sheet, the parties' relationship could be ended by either party with "no resulting liability." Notwithstanding that, on March 2, 2020, Siemens purported to notify WSS that it was "terminat[ing]" WSS for default under the terms of certain purchase orders. *Id*. at ¶ 40.

IV.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a cause of action that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A conclusory assertion is a statement without "factual enhancement" to support the conclusion. *Id.* In other words, the complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation" to defeat dismissal. *Id.* (quoting *Bell Atl. Corp v. Twombly,* 550 U.S. 544, 555 (2007) (citations omitted)).

V.   **LEGAL ARGUMENT**

Plaintiff's breach of contract claim fails because WSS did not breach any enforceable contract terms as a matter of law. Plaintiff and WSS mutually and unambiguously manifested their intent <u>not</u> to be bound by any agreement, absent an executed Subcontract. Moreover, this issue is

ripe for a motion to dismiss.[2] Under Oregon law,[3] the party asserting breach bears the burden of proving the existence of an enforceable contract.[4] *Meyer v. Mittal*, 2022 WL 1074006, at *2 (D. Or. Apr. 7, 2022) (citing *Holdner v. Holdner*, 176 Or. App. 111, 120, 29 P.3d 1199, 1203 (2001)). And whether a contract exists is a question of law. *Ken Hood Constr. Co. v. Pac. Coast Constr., Inc.*, 201 Or. App. 568, 577 (2005).

A.  **Plaintiff Fails to State a Claim for Breach of Contract Because There Was No Enforceable Contract to Deliver Integrated Units to Plaintiff.**

    1.  The parties mutually and unambiguously manifested their intent not to be bound absent an executed Subcontract, which was never signed.

Plaintiff contends that WSS breached the terms and conditions of the Term Sheet (and of certain purchase orders) by failing to deliver completed units within the time specified by Plaintiff. Compl. at ¶¶ 51-54.[5] But the plain terms of the Term Sheet make clear that both parties could walk away "with no resulting liability" at any time before a Subcontract was executed. Dkt. 1-3 at 3. Thus, there was no enforceable contract to produce the integrated units because the parties manifested their intent not to be bound without an executed Subcontract.

In assessing whether a contract was formed, Oregon applies an objective theory of contracts. *See State v. Heisser*, 350 Or. 12, 25–26, 249 P.3d 113 (2011). "'The law of contracts is not concerned with the parties' undisclosed intents and ideas. It gives heed only to their communications and overt acts.'" *Id*. at 25 (quoting *Kitzke v. Turnidge*, 209 Or. 563, 573, 307 P.2d 522 (1957)); *see also Kabil Developments Corp. v. Mignot*, 279 Or. 151, 157, 566 P.2d 505 (1977)

---

[2] In considering a motion to dismiss, the Court may consider certain materials—documents attached to the complaint or documents incorporated by reference in the complaint—without converting the motion into one for summary judgment. *Burns v. Thuney*, 2023 WL 8096888, at *1 n.1 (D. Or. Nov. 21, 2023) (citing *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 1003 (9th Cir. 2018)).
[3] It appears on the face of the Complaint that Oregon law applies. If necessary, WSS reserves the right to address choice-of-law issues in its reply. Regardless, Plaintiff fails to state a claim under either Oregon or Pennsylvania law.
[4] Federal courts apply state law, rather than federal common law, to questions of contract formation. *See, e.g., Collins v. Thompson*, 679 F.2d 168, 170-71 (9th Cir. 1982) (applying the law of the state in which the contract was allegedly formed to question of contract formation). Oregon law therefore controls the question of whether the parties created a binding agreement.
[5] Plaintiff's Complaint makes no allegation that WSS breached the terms of the Teaming Agreement.

(concluding that the correct test for contract formation examines "manifested assent regardless of subjective intent").

It is well-settled under Oregon law that courts will enforce an agreement not to be bound. *See Logan v. D.W. Sivers Co.*, 343 Or. 339, 169 P.3d 1255 (2007); *see also* E. ALLAN FARNSWORTH, ET AL., FARNSWORTH ON CONTRACTS § 3.07 (Fourth Edition, 2024-2 Supp. 2018) ("Under the objective theory . . . one party's intention not to be legally bound prevails if it is actually known to the other party, regardless of what the other party might have reason to know."); Restatement (Second) of Contracts § 27 cmt. b (1981) ("if either party knows or has reason to know that the other party regards the agreement as incomplete and intends that no obligation shall exist until other terms are assented to or until the whole has been reduced to another written form, the preliminary negotiations and agreements do not constitute a contract.").[6]

For example, the *Logan* case involved negotiations over the purchase and sale of a piece of real property. 343 Or. at 342. As part of those negotiations, the parties signed a letter of intent that contained a "pledge not to be bound" (*id*. at 354), which stated:

> Seller and Purchaser acknowledge that this Letter of Intent proposal <u>*is not a binding agreement*</u> and that it is intended solely to establish the principal terms of the purchase and as a basis for the preparation of a binding Purchase and Sale Agreement. The Purchase and Sale Agreement shall be subject to Seller's and Purchaser's approvals and approval by their respective counsel, and *only a fully executed Purchase and Sale Agreement shall constitute a binding transaction and binding obligation between the parties*; provided, however, that in consideration of Purchaser's good faith efforts to review the due diligence material provided by Seller, Seller agrees to be bound to provide the required due diligence documents to Purchaser within the time required and to comply with the Non-Solicitation provision set forth above.

---

[6] Courts in Oregon have relied on the Restatement (Second) of Contracts § 27 and comments in prior cases. *See Ken Hood Constr. Co. v. Pac. Coast Constr., Inc.*, 201 Or. App. 568, 577 (2005). Moreover, Pennsylvania law is in accord. *See* 16 Summ. Pa. Jur. 2d Commercial Law § 1:17 (2d ed.) ("In ascertaining the intent of the parties to a contract, it is their outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions, that matter.").

PAGE 7 – DEFENDANT WS ACQUISITION, LLC'S MOTION TO DISMISS

*Id*. at 344 (italic emphasis in original; underline added). Although the court recognized the contract provided some narrow enforceable terms where the parties "agree[d] to be bound," it also enforced the parties' express intent ***not*** to be bound by the agreement more generally. Specifically, it explained:

> As the parties' agreement put it: "[O]nly a fully executed Purchase and Sale Agreement shall constitute a binding transaction and binding obligation between the parties." <u>The parties clearly intended, and clearly had the right to expect, that that disclaimer would shield them from any liability for failing to carry through with the sale that then was being contemplated</u>. [. . .] The parties expressly declined, in the letter of intent, to assume the risks of injury inherent in a completed contract of purchase and sale.

*Id*. at 353 (emphasis added). So, while the court found some promises made, those promises did not flow to the ultimate transaction that was under contemplation:

> [B]ecause defendant never agreed to sell or even to negotiate in good faith toward the sale of the property to plaintiff (and, in fact, explicitly disclaimed any such agreement when it signed the letter of intent), plaintiff cannot, under this contract, charge defendant with losses that flowed from her inability to finally purchase it.

*Id*. at 354-55. The *Logan* court described the letter of intent as a "disclaimer of any intent to bind themselves to a purchase and sale" and as a "pledge not to be bound." *Id*. at 352-54.

A "pledge not to be bound" is precisely what Plaintiff and WSS agreed upon here. Like the parties in *Logan*, the terms of the Term Sheet made clear that the parties were not bound to work together and were free to discontinue their relationship ***at any time***, unless and until they agreed on the final terms of a Subcontract. *Compare* Dkt. 1-3 at 3 ("*Until any such Subcontract is executed, either party may discontinue discussions or negotiations regarding the Subcontract at any time with no resulting liability*.") (emphasis added), *with Logan*, 343 Or. at 354 ("Seller and Purchaser acknowledge that *this Letter of Intent proposal is not a binding agreement* and that it is intended solely to establish the principal terms of the purchase and as a basis for the preparation of a binding Purchase and Sales Agreement. * * * [O]nly a fully executed Purchase and Sale Agreement shall constitute a binding transaction and binding obligation between the parties.") (emphasis added by court).

And like the parties in *Logan*, Plaintiff and WSS "clearly had the right to expect[] that that disclaimer would shield them from any liability for failing to carry through with the [contract] that then was being contemplated." *Id*. at 353. *Logan* stands for the proposition that "a pledge not to be bound" should be enforced, and that is what the Court should do here. Indeed, if the Court were to disregard this key, dispositive provision, it would undermine sophisticated parties' future contract drafting and create uncertainty regarding whether "pledges not to be bound" will be enforced on their face under Oregon law. This could chill parties' willingness to enter into preliminary negotiations because it could create risk that they could be bound in the future *even if they both explicitly agree not to be bound*. This is precisely why courts in Oregon and elsewhere enforce contractual provisions not to be bound.[7]

In addition to the express language in the Term Sheet, WSS made its intent not to be bound clear in the terms of the Teaming Agreement. Dkt. 1-2 at 1 ("neither party shall have any right to any reimbursement, payment, or compensation of any kind from each other during the period between the effective date of this Teaming Agreement and the execution of [the] Subcontract."). This is similar to the situation at issue in *Erection Co. v. W & W Steel, LLC*, where one party prepared a letter of intent stating "[t]he parties agree that it is their intention that a binding contract and agreement shall exist between them and shall be effective *only* when the Subcontract Agreement is signed by all parties." 2011 WL 5008325, at *2 (D. Or. Oct. 20, 2011), *aff'd*, 513 F. App'x 664 (9th Cir. 2013) (emphasis in original letter). The letter of intent went unsigned and no future contract was executed. Regardless, when the opposing party brought suit to enforce the parties' subsequent negotiations, this Court found there was no contract because the letter of intent unequivocally manifested the intent not to bound absent an executed subcontract. *Id.*

This same reasoning applies even more so in this case because Plaintiff and WSS are sophisticated parties who both signed the Teaming Agreement and the Term Sheet, each of which

---

[7] *See, e.g., Diamond Elec. Inc. v. Pace Pac. Corp.*, 346 F. App'x 186, 187 (9th Cir. 2009) (unpublished) (applying Nevada law); *Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309, 315 (9th Cir. 1996) (applying California law); *Philmar Mid-Atl., Inc. v. York St. Assocs. II*, 389 Pa. Super. 297, 566 A.2d 1253 (1989) (applying Pennsylvania law).

manifested their respective intent not to be bound absent an executed Subcontract. In short, WSS cannot be held to any obligation to deliver completed units to Plaintiff when WSS never agreed to any such obligation, and instead, it and Plaintiff agreed not to be bound until a Subcontract was executed, which never happened.

## VI.  CONCLUSION

The parties agreed not to be bound until a Subcontract was executed. No Subcontract was ever agreed upon. Thus, Plaintiff's breach of contract claim must be dismissed with prejudice.

Dated:    March 11, 2024

*This Brief Contains 3,142 Words, in Compliance with the Local Civil Rules.*

**MORGAN, LEWIS & BOCKIUS LLP**

By   *s/ Damon C. Elder*
Damon C. Elder, OSB No. 085313
1301 Second Avenue, Suite 3000
Seattle, WA 98101
Email: damon.elder@morganlewis.com

**MORGAN, LEWIS & BOCKIUS LLP**

By   *s/ Troy S. Brown*
Troy S. Brown, (*Pro Hac Vice*)
2222 Market Street
Philadelphia, PA 19103
Email: troy.brown@morganlewis.com

**MULLINS LAW OFFICE, LLC**

By   *s/ Scott L. Mullins*
Scott L. Mullins, OSB No. 142504
1000 SW Broadway St., Suite 2300
Portland, OR 97205
Email: scott@slmullins.com

*Attorneys for Defendant*