**DAVID H. ANGELI**, OSB No. 020244
david@angelilaw.com
**EDWARD A. PIPER**, OSB No. 141609
ed@angelilaw.com
ANGELI LAW GROUP LLC
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

**GEORGE D. RUTTINGER**, admitted *pro hac vice*
gruttinger@crowell.com
**ANUJ VOHRA**, admitted *pro hac vice*
avohra@crowell.com
**WILLIAM B. O'REILLY**, admitted *pro hac vice*
woreilly@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Ave. NW
Washington, D.C. 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116

Attorneys for Plaintiff Siemens Medical Solutions USA, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| SIEMENS MEDICAL SOLUTIONS USA, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>WS ACQUISITION, LLC dba WESTERN SHELTER SYSTEMS, an Oregon limited liability company,<br><br>Defendant. | Case No. 6:23-cv-01882-MC<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Request for Oral Argument |

**TABLE OF CONTENTS**

TABLE OF CONTENTS _____ i

TABLE OF AUTHORITIES _____ ii

I.   INTRODUCTION _____ 1

II.  ARGUMENT _____ 3

     A.   Standard of Review_____ 3

     B.   Siemens Healthineers' Complaint Alleges the Existence of Contractual
          Obligations That WSS Breached to Siemens Healthineers' Detriment _____ 4

          1.   Siemens Healthineers' Complaint Details the "Essential Terms" of WSS'
               Contractual Obligations _____ 4

               a.   Siemens Healthineers and WSS Entered Into a Term Sheet With
                    Numerous Provisions Related to WSS' Integration Work
                    Specifically Designated as "Binding"_____ 4

               b.   Upon DLA's Contract Award, Siemens Healthineers Issued
                    Multiple Purchase Orders to WSS—Each of Which Incorporated
                    Siemens Healthineers' Terms and Conditions—Which WSS
                    Accepted Without Reservation _____ 6

               c.   Absent a Definitized Subcontract, WSS Commenced Performance
                    Pursuant to the Binding Provisions of the Term Sheet and the
                    Purchase Orders _____ 7

          2.   WSS' Performance Failures and Repudiation of its Contractual
               Obligations Constitute a Breach _____ 7

          3.   Siemens Healthineers Suffered Damages _____ 8

     C.   WSS' Dismissal Request Asks the Court to Ignore All of the Allegations in
          Siemens Healthineers' Complaint Establishing the Existence of Enforceable
          Contract Obligations_____ 9

          1.   The Term Sheet Includes Binding Provisions that Governed the Parties'
               Course of Performance Immediately Upon DLA's Contract Award to
               Siemens Healthineers _____ 10

          2.   The Parties' Course of Performance Immediately Upon DLA's Contract
               Award to Siemens Healthineers Demonstrates an Intent to Be Bound by
               the Binding Terms in the Term Sheet_____ 14

          3.   The Purchase Orders (and Incorporated Terms and Conditions) Siemens
               Healthineers Issued to WSS Otherwise Established Binding Contractual
               Obligations WSS Breached_____ 16

III. CONCLUSION_____ 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arnett v. Bank of Am., N.A.*,
  874 F. Supp. 2d 1021 (D. Or. 2012) ....................................4

*ASARCO, LLC v. Union Pac. R. Co.*,
  765 F.3d 999 (9th Cir. 2014) ....................................3

*Atlantic Richfield Co. v. Razumic*,
  480 Pa. 366, 390 A.2d 736 (1978) ....................................14

*Bryant v. Allstate Indem. Co.*,
  605 F. Supp. 3d 1326 (D. Or. 2022) ....................................3

*Capek v. Devito*,
  564 Pa. 267, 767 A.2d 1047 (2001) ....................................11

*Deerfield Commodities, Ltd. v. Nerco, Inc.*,
  72 Or. App. 305, 696 P.2d 1096 (1985) ....................................14

*KORE Cap. Corp. v. StoneMor Operating LLC*,
  608 F. Supp. 3d 208 (E.D. Pa. 2022) ....................................4

*Kripp v. Kripp*,
  578 Pa. 82, 849 A.2d 1159 (2004) ....................................12

*Logan v. D.W. Siwers Co.*,
  343 Or. 339, 169 P.3d 125 (2007) ....................................13, 14

*Operative Bricklayer's Union No. 64 of Pennsylvania Welfare Fund v.*
  *Bricklayer's Local Union No. 1 of Pennsylvania Welfare Fund*,
  45 F.R.D. 429 (E.D. Pa. 1968) ....................................3

*Ortega v. Santa Clara Cnty*,
  No. 19-17547, 2021 WL 5855066 (9th Cir. Dec. 9, 2021) ....................................3

*Pennsylvania Eng'g Corp. v. McGraw-Edison Co.*,
  500 Pa. 605, 459 A.2d 329 (1983) ....................................14

*Porter v. Chevron Appalachia, LLC*,
  2019 PA Super 31, 204 A.3d 411 (2019) ....................................11, 13

*Slover v. Oregon State Bd. of Clinical Soc. Workers*,
  144 Or. App. 565, 927 P.2d 1098 (1996) ....................................4

*Suk v. JM Bullion, Inc.*,
   635 F. Supp. 3d 1104 (D. Or. 2022) ...................................................................3

*Taylor v. Yee*,
   780 F.3d 928 (9th Cir. 2015) ...........................................................................3

*Ware v. Rodale Press, Inc.*,
   322 F.3d 218 (3d Cir. 2003)...........................................................................4

*Williams v. RJ Reynolds Tobacco Co.*,
   351 Or. 368, 271 P.3d 103 (2011) ...............................................................11

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) .........................................................................3

*Yogman v. Parrott*,
   325 Or. 358, 937 P.2d 1019 (1997) .............................................................12

**Rules**

Fed. R. Civ. P. 12(b)(6)..................................................................................3

Siemens Medical Solutions USA, Inc. ("Siemens Healthineers") hereby responds to the March 11, 2024 Motion to Dismiss filed by WS Acquisitions, LLC dba Western Shelter Systems ("WSS").  *See* Dkt. 19 ("Motion" or "Mot.").  For the reasons set forth below, WSS' Motion should be denied.

## I.    INTRODUCTION

This case involves WSS' breaches of multiple contractual obligations that caused Siemens Healthineers over two years of delays and millions of dollars in cost overruns for the manufacture and delivery of critically needed medical imaging equipment to the U.S. Department of Defense ("DOD"), Defense Logistics Agency ("DLA").

In March 2018, the parties executed a Teaming Agreement in which they agreed to jointly pursue a DLA opportunity to supply computed tomography scanners in mobile containers ("Deployable CT Scanners") to the U.S. Army, Navy, and Air Force.  Those Deployable CT Scanners will be used to treat soldiers injured on the battlefield.  Under the Teaming Agreement, Siemens Healthineers would act as the prime contractor, while WSS would serve as a subcontractor integrating Siemens Healthineers' CT scanners into mobile container units.

On March 8, 2018, the parties executed a Term Sheet that, while leaving certain items subject to negotiation, established "***[b]inding***" pricing, payment, technical and delivery terms and conditions upon which Siemens Healthineers would issue purchase orders to WSS for the integration services necessary to fulfill orders placed by DLA and its DOD customers, including a unit for First Article Testing ("FAT").  After DLA awarded Siemens Healthineers a prime contract for up to 45 Deployable CT Scanners, Siemens Healthineers issued a series of purchase orders to WSS for integration work consistent with the binding terms of the Term Sheet.  WSS accepted those purchase orders without reservation and began work.  WSS then failed in its performance obligations, and ultimately repudiated them entirely.

PAGE 1 -    PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS

Now WSS seeks to avoid the consequences of its serial failures by claiming it was under no contractual obligation at all to perform integration work in the absence of a separately executed subcontract. WSS' argument hinges entirely on a single phrase plucked from the parties' Term Sheet allowing the parties to cease negotiations of a definitized subcontract. WSS claims this language made the Term Sheet "an agreement not to be bound," and as a result, WSS was subject to no contractual obligations—and no liability whatsoever—absent a final subcontract agreement. WSS' argument fails for two simple reasons.

***First***, the Term Sheet expressly carved out its binding provisions—related to, among other things, WSS' unit pricing for all integrated Deployable CT Scanners DLA might order and the delivery schedule for the FAT unit—from the Term Sheet's other non-binding provisions. And immediately upon DLA's contract award to Siemens Healthineers, the parties' course of performance was sufficient to establish their mutual intent to be bound as to WSS' integration obligations consistent with the binding terms of the Term Sheet.

***Second***, even assuming, for the sake of argument, the Term Sheet was non-binding, the multiple purchase orders Siemens Healthineers issued to WSS—which WSS accepted without reservation, and pursuant to which WSS began performance—separately bound WSS.

As detailed in Siemens Healthineers' Complaint, WSS agreed to be bound in both word and deed before subsequently breaching its obligations. And WSS' breaches were egregious, including precipitously stopping work critical to a national defense contract before taking hostage federally-owned property provided to it strictly for performance of the same. Siemens Healthineers' Complaint clearly states a claim upon which relief may be granted. WSS' Motion to Dismiss should be denied.

## II.    ARGUMENT

### A.    Standard of Review

"A Rule 12(b)(6) motion tests whether there is a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Bryant v. Allstate Indem. Co.*, 605 F. Supp. 3d 1326, 1329 (D. Or. 2022) (citing *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015)).  "To survive a Rule 12(b)(6) motion, the complaint must allege enough facts to state a claim to relief that is plausible on its face." *Id.* (internal citation omitted).  "In evaluating a motion to dismiss, the court must accept all well-pleaded material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party." *Id.* (citing *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012)).

"Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint." *Suk v. JM Bullion, Inc.*, 635 F. Supp. 3d 1104, 1107 (D. Or. 2022) (quoting *Ortega v. Santa Clara Cnty. Jail*, No. 19-17547, 2021 WL 5855066, at *1 (9th Cir. Dec. 9, 2021) (internal alteration omitted)).  An assertion that the stated cause of action is barred by contract constitutes an affirmative defense, and may only provide a basis for dismissal where the contractual terms unambiguously prohibit the relief sought.  *See ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1009 (9th Cir. 2014) ("If the settlement agreement is ambiguous, then interpretation of the agreement presents a fact issue that cannot be resolved on a motion to dismiss."); *see, e.g.*, *Operative Bricklayer's Union No. 64 of Pennsylvania Welfare Fund v. Bricklayer's Local Union No. 1 of Pennsylvania Welfare Fund*, 45 F.R.D. 429, 431 (E.D. Pa. 1968) ("It is not clear that the contract provisions critical here are so unambiguous that the interpretation of the contract exclusively is a matter for the Court and not for a jury.").

B.    **Siemens Healthineers' Complaint Alleges the Existence of Contractual Obligations That WSS Breached to Siemens Healthineers' Detriment**

"Under Pennsylvania law, a Plaintiff claiming breach of contract must allege '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resulting damages.'"  *KORE Cap. Corp. v. StoneMor Operating LLC*, 608 F. Supp. 3d 208, 211 (E.D. Pa. 2022) (quoting *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (internal alterations omitted)).[1]  WSS' Motion challenges the sufficiency of Siemens Healthineers' Complaint only with respect to the first of these elements.  Mot. 6 ("the party asserting breach bears the burden of proving the existence of an enforceable contract.").  Nevertheless, as demonstrated below, Siemens Healthineers' Complaint satisfies its burden to allege facts establishing each of these elements.

1.    **Siemens Healthineers' Complaint Details the "Essential Terms" of WSS' Contractual Obligations**

a.    **Siemens Healthineers and WSS Entered Into a Term Sheet With Numerous Provisions Related to WSS' Integration Work Specifically Designated as "Binding"**

The March 6, 2018 Term Sheet upon which WSS' motion relies contains a number of "***[b]inding***" provisions regarding WSS' integration work.  Dkt. 1-3 at 2 (emphasis in original); *see* Dkt. 1 at ¶ 18.  Those binding terms governed all of the following: (1) WSS' fixed-unit pricing, *see* Dkt. 1-3 at 2 ("For all Project Deliverables (if included in a DLA Purchase Order

---

[1]    As noted in Siemens Healthineers' Complaint, the relevant contractual documents identify Pennsylvania law as controlling.  *See* Dkt 1 at ¶ 24.  However, Oregon law is substantially similar to that of Pennsylvania in all respects relevant to WSS' Motion such that the Court need not resolve any choice-of-law issues at this juncture.  *See, e.g.*, *Arnett v. Bank of Am., N.A.*, 874 F. Supp. 2d 1021, 1029 (D. Or. 2012) (To state a claim for breach of contract under Oregon law, a 'plaintiff must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting in damage to plaintiff.'") (quoting *Slover v. Oregon State Bd. of Clinical Soc. Workers,* 144 Or. App. 565, 570, 927 P.2d 1098 (1996); *see also* Mot. at 7 n.6.

PAGE 4 -    PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

issued pursuant to the [Request for Offer ("RFO")]), Siemens will pay [WSS] a per-Unit Price of $166,869.13"); (2) escalation for WSS' fixed-unit pricing, *id*. ("The above per-Unit price shall be increased by . . ."); (3) invoicing requirements for WSS, *id*. ("Invoices submitted by [WSS] to Siemens shall contain no further price adjustments . . ."); (4) payment terms for all 45 units DLA might order, *id*. ("Payment for any Project Deliverable Units 1-45 shall be made by Siemens to [WSS] as follows . . ."); (5) technical specifications for First Article testing, *id*. ("For the First Article Test Unit required by the RFO, [WSS'] Deliverables shall comply with the applicable specifications of the RFO"); and (6) a delivery deadline for the First Article, *id*. ("For the First Article Test Unit required by the RFO, [WSS'] Deliverables shall be provided within 120 days of the RFO's Unit delivery deadline.").  Relevant here, the Term Sheet's binding terms contemplated WSS beginning integration work prior to Subcontract execution, with cost and payment terms to be trued up as necessary in the Subcontract.  *See id*. (regarding potential DLA amendments to First-Article testing requirements, "[i]f such testing-related amendments impose materially lower costs, then the parties shall make a downward adjustment in the Subcontract").

On March 24, 2018, the parties executed Addendum #1 to the Term Sheet, which contained two new binding terms.  *See* Dkt. 1 at ¶ 19; Dkt. 1-4.  First, Addendum #1 instructed that Siemens would pay WSS a per-Unit Price consistent with an "Addendum Pricing Worksheet" appended to Addendum #1, and would include WSS' unit transportation and insurance costs.  Dkt. 1-4 at 1.  Second, Addendum #1 directed that "Siemens would pay [WSS] non-recurring engineering expenses (NRE) of $171,428.57 after a DLA purchase order is issued to Siemens."  *Id*.

       **b.**     **Upon DLA's Contract Award, Siemens Healthineers Issued Multiple Purchase Orders to WSS—Each of Which Incorporated Siemens Healthineers' Terms and Conditions—Which WSS Accepted Without Reservation**

On May 6, 2019, DLA selected Siemens Healthineers as its Deployable CT vendor, issuing a delivery order for a FAT unit utilizing a government-furnished shelter. Dkt. 1 at ¶ 22. The DLA delivery order required Siemens Healthineers to deliver the FAT unit within 120 days of receipt of the government shelter. *Id*. The government-furnished shelter was delivered directly to WSS on May 24, 2019, resulting in a FAT delivery deadline of September 25, 2019. *Id.*

On June 13, 2019, Siemens Healthineers issued Purchase Order No. 5333478 to WSS, ("Purchase Order 1") with a total value of $366,892.37. *Id*. at ¶ 23; Dkt. 1-6. Consistent with the binding terms of Addendum #1 to the Term Sheet, the value of Purchase Order 1 consisted of $171,428.57 in NRE costs for integration, and $172,101.85 representing WSS' applicable unit pricing for integration. Dkt. 1 at ¶ 23; Dkt. 1-6. Purchase Order 1 expressly stated that it was "subject to your acceptance of the terms and conditions, located at:

http://www.usa.siemens.com/SupplierStandards," and that WSS needed to "provide immediate notification in writing to Siemens of any part changes to the product, service, or internal process for any item covered by this Purchase Order." Dkt. 1 at ¶ 23; Dkt. 1-6.

Relevant here, Siemens Healthineers' Terms and Conditions instructed that "[a]cceptance by Seller of SIEMENS' Purchase Order under the terms and conditions stated hereon shall be indicated by either written acceptance *or commencement of performance pursuant to this Purchase Order*." Dkt. 1-7 (emphasis supplied). At no point following Siemens Healthineers' issuance of Purchase Order 1 did WSS take exception to any of the terms therein, indicate that it was performing under a reservation of rights, or suggest that either Purchase Order 1 or its

incorporated terms and conditions were not binding upon WSS because the parties had not yet finalized the terms of a subcontract.

DLA issued additional delivery orders to Siemens Healthineers on July 15, August 1, and August 12, 2019. *Id*. at ¶ 27. Following receipt of those orders, Siemens Healthineers issued four additional purchase orders to WSS—three on August 20, one on August 22, 2019—each in the amount of $378,214.24. *Id*. at ¶ 27; Dkt 1-8. As with Purchase Order 1, the August purchase orders expressly incorporated Siemens Healthineers' Terms and Conditions. *See* Dkt 1 at ¶ 27; Dkt 1-8. Once again, WSS accepted these purchase orders without reservation.

### c.    Absent a Definitized Subcontract, WSS Commenced Performance Pursuant to the Binding Provisions of the Term Sheet and the Purchase Orders

On June 12, 2019—one day prior to Siemens Healthineers' issuance of Purchase Order 1 —WSS provided Siemens Healthineers with a project plan estimating the time needed to perform the integration work for the FAT unit called for by the binding terms of the Term Sheet. Dkt. 1 at ¶ 26; *see* Dkt. 1-3 at 2. WSS continued performing pursuant to those binding terms until it repudiated them entirely. Dkt. 1 at ¶¶ 26, 28, 30; *see also id.* at ¶ 39 (WSS stating it had stopped all in-progress work). By the time Siemens Healthineers terminated it for default, WSS claimed to have incurred $684,053 in the course of its integration work. *Id.* ¶ 41.

### 2.    WSS' Performance Failures and Repudiation of its Contractual Obligations Constitute a Breach

WSS failed to complete any of the obligations required by the Term Sheet and Siemens Healthineers' purchase orders. *Id.* at ¶¶ 26-29. As explained in Siemens Healthineers' Complaint, despite the Term Sheet's express incorporation of DLA's 120-day delivery timeframe for the FAT unit—which resulted in a delivery deadline of September 25, 2019— WSS' project plan estimated that it would not complete its work on that unit until October 14.

*Id.* at ¶ 26.  And even with this more generous schedule, WSS was still unable to complete its work in a timely fashion.  *Id.* at ¶ 28.

Despite these failures—or perhaps because of them—WSS scuttled negotiation of what was supposed to become the definitive subcontract contemplated by the Term Sheet.  *Id.* at ¶¶ 30-39.  To this end, WSS demanded additional agreements that it then refused to participate in preparing or revising, *id.* at ¶¶ 34, 36, while attempting to renegotiate previously agreed-upon terms to increase its compensation while decreasing its actual responsibilities, *id.* at ¶¶ 33, 37, before ultimately resorting to outright coercion—WSS threatened to jeopardize Siemens Healthineers' relationship with DLA by stopping work.  *Id.* at ¶¶ 35-36.  When even that proved unsuccessful, WSS repudiated its obligations, "rejected in full" the economics to which it had previously agreed, and walked away from the project.  *Id.* at ¶¶ 38-39.

### 3.    Siemens Healthineers Suffered Damages

As a result of WSS' serial performance failures and ultimate repudiation, Siemens Healthineers suffered damages in myriad ways.  *See id.* at ¶ 55.

Even before WSS repudiated its obligations under the Term Sheet and associated purchase orders, Siemens Healthineers had already begun to incur damages in the form of concessions to DLA to compensate for the various schedule delays caused by WSS' non-performance, as well as supplier agreements Siemens Healthineers negotiated for materials WSS was supposed to acquire itself.  *Id.* at ¶¶ 29, 33.  And following WSS' repudiation and subsequent termination for default, Siemens Healthineers incurred additional damages in the form of cover costs to replace the work WSS had contracted to perform.  *Id.* at ¶¶ 43-46.

But Siemens Healthineers' damages did not end there.  Not content to simply walk away from its contractual obligations, WSS proceeded to demand nearly $700,000 in payment for work it never completed, on units it never delivered.  *Id.* at ¶ 41.  And to coerce this payment out

of Siemens Healthineers, WSS refused to return a DLA-owned shelter it had previously received for the FAT unit, necessitating intervention from Siemens Healthineers' outside counsel. *Id.* Upon the belated return of this shelter, Siemens Healthineers then discovered that WSS had caused substantial damage to it, resulting in remediation costs Siemens Healthineers was required to incur. *Id.* at ¶ 42.

C. **WSS' Dismissal Request Asks the Court to Ignore All of the Allegations in Siemens Healthineers' Complaint Establishing the Existence of Enforceable Contract Obligations**

All of the above confirms that Siemens Healthineers' Complaint plainly alleges the existence of enforceable contractual obligations upon WSS in the form of both the binding language of the March 6, 2018 Term Sheet, as well as the individual purchase orders Siemens Healthineers issued to WSS following DLA's contract award. Dkt. 1 at ¶¶ 51-52. To argue otherwise, WSS seizes upon language in the Term Sheet declaring it "non-binding" and allowing either party, until the execution of a definitive subcontract, to "discontinue discussions or negotiations regarding the Subcontract at any time with no resulting liability." *See generally* Mot; Dkt. 1-3 at 3. WSS declares this language rendered the Term Sheet "an agreement not to be bound." Mot. 7. WSS is wrong for a number of reasons, and the language in the Term Sheet upon which it relies does not shield it from liability.

***First***, notwithstanding the language to which WSS points, the Term Sheet also contains numerous provisions identified as "***[b]inding***" that speak directly to WSS' integration work in support of Siemens Healthineers' DLA contract. *See* Dkt. 1-3 at 2-3. And the Term Sheet explicitly carved out of its non-binding nature those "matters [that] have been designated as binding." *See id*. Moreover, upon DLA's contract award to Siemens Healthineers, the parties immediately began performance consistent with those binding terms, evidencing the parties' intent to be bound by them. The non-binding terms of the Term Sheet have no bearing upon

WSS' liability to Siemens Healthineers; WSS' liability arises out of the Term Sheet's binding terms, and the parties' performance consistent with them.

*Second*, in addition to the binding language of the Term Sheet, the purchase orders Siemens Healthineers issued to WSS created legally binding obligations to perform integration work in support of Siemens Healthineers' DLA contract. WSS' performance failure and ultimate repudiation separately breached each of those purchase orders.

In sum, throwing roadblocks into, and then walking away from, negotiations of a definitized subcontract does not insulate WSS from liability resulting from its breach of its binding contractual obligations that arose *independent of* that subcontract. WSS' motion should be denied.

### 1. The Term Sheet Includes Binding Provisions that Governed the Parties' Course of Performance Immediately Upon DLA's Contract Award to Siemens Healthineers

WSS' motion fails at its inception because the non-binding language of the Term Sheet upon which WSS relies expressly disclaims those matters contained therein designated as binding: "***This Term Sheet is non-binding on either party, except for the section below which is designated as binding***." *See* Dkt. 1-3 at 1 (emphasis supplied); *see id*. at 3 (Term Sheet explaining that it imposed no binding obligations on the parties except for "matters [that] have been designated as binding"). The "binding" terms of the Term Sheet imposed clear, immediate obligations upon both parties following DLA's award to Siemens Healthineers of a contract for deployable CT units. *See id.* It is that binding language of the Term Sheet—not the non-binding language to which WSS points—from which WSS' liability arises.

WSS would have the Court ignore this language in the Term Sheet entirely.  But "[i]n construing a contract, [the Court] must give effect to all of the provisions therein."  *Porter v. Chevron Appalachia, LLC*, 2019 PA Super 31, 204 A.3d 411, 418 (2019); *accord Williams v. RJ Reynolds Tobacco Co.*, 351 Or. 368, 379, 271 P.3d 103 (2011) ("The court must, if possible, construe the contract so as to give effect to all of its provisions.").  "An interpretation will not be given to one part of the contract which will annul another part of it."  *Porter*, 204 A.3d at 418 (quoting *Capek v. Devito*, 564 Pa. 267, 767 A.2d 1047, 1050 (2001)).

As explained in Siemens Healthineers' Complaint, the Term Sheet includes payment, technical, and delivery terms explicitly labeled as "binding."  Dkt. 1 at ¶ 18; *see* Dkt. 1-3 at 2. And while the Term Sheet included the language upon which WSS relies evincing the parties' intent not to be bound by ***all*** provisions thereof, that language is clearly and consistently caveated so as to exclude the aforementioned binding terms from its reach.  *See* Dkt. 1-3 at 1 ("This Term Sheet is non-binding on either party, ***except for the section below which is designated as binding***."), *id.* at 3 ("***Except for the designated paragraphs above***, this Term Sheet is non-binding on either party.  Neither this Term Sheet, nor any oral or written communication concerning the matters covered by this Term Sheet, shall create any binding obligations on either party ***unless the matters have been designated as binding*** . . . .") (emphases supplied).

WSS makes no real effort to grapple with the Term Sheet's binding language, other than to claim that "those terms would only become binding terms in a future Subcontract; they were not immediately binding duties on either party."  Mot. 4.  But WSS' argument here conflicts with the Term Sheet's instruction that the terms contained therein were non-binding "unless the matters have been designated as binding, ***or until*** a Subcontract is negotiated."  Dkt. 1-3 at 3

(emphasis supplied).  The "or until" language plainly means that terms designated as binding

imposed obligations upon the parties ***independent*** of the negotiation of a Subcontract.  Siemens

Healthineers has offered a reasonable reading of this language in the Term Sheet; WSS has failed

to offer an alternative.  As a result, WSS' Motion must fail.[2]

Moreover, WSS' argument that nothing in the Term Sheet was binding until the parties

definitized a subcontract ignores the fact that certain of the Term Sheet's identified binding

terms—regarding the technical specifications and delivery timing of the shelter for FAT—are

tethered to DLA's RFO.  Dkt. 1-3 at 2 ("For the First Article Test Unit required by the RFO, the

Integrator's Deliverables shall comply with the applicable specifications of the RFO"), *id.* ("For

the First Article Test Unit required by the RFO, [WSS'] Deliverables shall be provided within

120 days of the RFO's Unit delivery deadline.").  DLA's RFO requirements existed independent

of, and were agnostic to, the content or timing of any subcontract Siemens Healthineers and

WSS might later execute.

Finally, if WSS' reading was correct, and the identified "binding" terms of the Term

Sheet did not become binding until the execution of a subcontract, the "binding" terms would be

no different than the identified "non-binding" terms of the Term Sheet—in the absence of a

definitized subcontract, they would have no effect on either party.  But were that the case, the

language designating those terms as "binding" would be superfluous and would serve no

---

[2]      Moreover, even if WSS had offered such a reasonable alternative reading of the binding
terms of the Term Sheet—which to reiterate, it has not—that would not foreclose Siemens
Healthineers' interpretation; at best, it would mean the Term Sheet was ambiguous.  *See, e.g.*,
*Kripp v. Kripp*, 578 Pa. 82, 91, 849 A.2d 1159 (2004) ("A contract is ambiguous if it is
reasonably susceptible of different constructions and capable of being understood in more than
one sense."); *accord Yogman v. Parrott*, 325 Or. 358, 363–64, 937 P.2d 1019 (1997) ("Words or
terms of a contract are ambiguous when they reasonably can, in context, be given more than one
meaning.").

purpose, as would the language highlighted above drawing a distinction between the Term Sheet's binding and non-binding language. Such a reading would be improper. *Porter*, 204 A.3d at 418.

Indeed, given the clear, unequivocal, and "***[b]inding***" provisions of the Term Sheet, the Oregon Supreme Court's decision in *Logan v. D.W. Siwers Co.*, 343 Or. 339, 169 P.3d 125 (2007), upon which WSS relies so heavily in its motion, undercuts WSS' argument, not supports it. WSS points to *Logan* for the proposition that "[i]t is well-settled under Oregon law that courts will enforce an agreement not to be bound." Mot. 7. But the *Logan* Court also made clear that the courts would enforce the binding provisions—such as those in the Term Sheet—of an "agreement not to be bound."

*Logan* considered a Letter of Intent for a property sale; relevant to WSS' argument, the Letter of Intent made clear it was not a binding purchase agreement and contained language explaining it was "intended solely to establish the principal terms of the purchase and as a basis for the preparation of a binding Purchase and Sale Agreement." *Logan*, 343 Or. at 344. But notwithstanding that language, the *Logan* court held the Letter of Intent "***did contain certain promises that were binding***," and that a trial court had erred in deeming it merely an agreement not to be bound that placed no obligations on the seller. *Id*. at 349 (emphasis supplied).

In so holding, the *Logan* court explained that "[a]lthough a provision of the letter of intent does expressly provide that the parties intend only to set out a framework for a future purchase and sale and that the letter, as a whole, is nonbinding," the provision also contained specific terms that were exceptions to that nonbinding intent. *Id*. at 347. The *Logan* court concluded that "unless those terms are so indefinite that a court cannot determine what the parties intended, ***they form a contract that is binding***." *Id*. at 347 (emphasis supplied).

PAGE 13 -    PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
         TO DISMISS

The *Logan* court's rationale is equally applicable here.  Notwithstanding the Term Sheet's non-binding language, it contains numerous provisions that were express exceptions to that intent, and imposed binding obligations upon both WSS and Siemens Healthineers as to pricing, payment, and, as is relevant here, WSS' obligations to deliver integrated containers upon DLA's contract award to Siemens Healthineers.  Those terms are not "so indefinite that a court cannot determine what the parties intended," and therefore they establish contractual obligations which WSS subsequently breached.  *See* Dkt. 1 at ¶¶ 51-55.

> **2.    The Parties' Course of Performance Immediately Upon DLA's Contract Award to Siemens Healthineers Demonstrates an Intent to Be Bound by the Binding Terms in the Term Sheet**

WSS' Motion also ignores the events post-dating execution of the Term Sheet which, as described in Siemens Healthineers' Complaint, include a course of performance demonstrating the parties' shared intent to be bound by the terms thereof.  As such, even were the language discussed above not clearly binding (it is), WSS nevertheless bound itself to perform, and its Motion must be denied regardless.

Under Pennsylvania law, "course of performance is always relevant in interpreting a writing," even if the contract is not ambiguous on its face.  *Pennsylvania Eng'g Corp. v. McGraw-Edison Co.*, 500 Pa. 605, 612, 459 A.2d 329 (1983) (quoting *Atlantic Richfield Co. v. Razumic,* 480 Pa. 366, 376 n. 6, 390 A.2d 736 (1978)); *accord Deerfield Commodities, Ltd. v. Nerco, Inc.*, 72 Or. App. 305, 324, 696 P.2d 1096 (1985) ("an integrated document need not be ambiguous before it may be supplemented or explained by evidence" of course of performance, provided the document is "reasonably susceptible to the interpretation suggested by the course of dealing, course of performance or usage of the trade").  And here, WSS' course of performance as described in Siemens Healthineers' Complaint unambiguously evidences that

WSS intended to be bound to perform certain obligations, which obligations it then failed to uphold.

As noted above, even before receiving any purchase orders from Siemens Healthineers, WSS commenced work pursuant to the Term Sheet. *See* Dkt. 1 at ¶ 26. Critically, this included developing project plans designed around Siemens Healthineers' own performance deadlines vis-à-vis DLA. *See id.* And after Siemens Healthineers began receiving orders from DLA, it proceeded to issue corresponding purchase orders to WSS conforming to the price and delivery terms prescribed by the Term Sheet, which WSS in turn accepted by performance without reservation or complaint. *Id.* at ¶¶ 22-25, 27, 52; *see also* Dkt. 1-6, 1-8. Moreover, the work WSS performed on this basis was not trivial; as noted in Siemens Healthineers' Complaint, WSS later sought reimbursement for nearly $700,000 in costs it claimed to have incurred performing its obligations. Dkt. 1 at ¶ 41. Indeed, WSS refused to return federal property (the government-provided shelter to be used for FAT) until it was paid those amounts. *Id.* In sum, WSS' conduct was entirely consistent with the existence of a binding contract as alleged by Siemens Healthineers.

WSS simply ignores all conduct alleged in Siemens Healthineers' Complaint post-dating execution of the Term Sheet. *See generally* Mot. This oversight is fatal to its dismissal request. The course of performance described in Siemens Healthineers' Complaint is consistent with each party intending to be bound by the provisions of the Term Sheet designated for that purpose, including the price and delivery terms incorporated into subsequent purchase orders. For this reason as well, Siemens Healthineers' Complaint alleges the existence of a binding contractual relationship sufficient to satisfy the elements of its stated cause of action. WSS' Motion should be denied accordingly.

### 3.    The Purchase Orders (and Incorporated Terms and Conditions) Siemens Healthineers Issued to WSS Otherwise Established Binding Contractual Obligations WSS Breached

Even accepting, for the sake of argument, WSS' reading of the Term Sheet's binding provisions as having no force and effect absent an executed subcontract, WSS' Motion provides no explanation of why that same conclusion should apply to the purchase orders issued by Siemens Healthineers for integration work WSS subsequently accepted. *See id.* ¶¶ 22-25, 27. In fact, beyond superficially acknowledging their existence, WSS' Motion is silent on the import of these purchase orders. *See* Mot. 2, 7.

In this regard, even accepting WSS' argument that the Term Sheet constituted an agreement not to be bound by the terms thereof, nothing in the Term Sheet prevented WSS from assuming additional binding obligations through separate instruments such as individual purchase orders. And Siemens Healthineers' Complaint clearly alleges facts sufficient to establish WSS in fact did so:

- On their face, the purchase orders incorporated Siemens Healthineers' standard terms and conditions, Dkt. 1 at ¶¶ 23, 27; *see also* Dkt. 1-6, 1-8;

- Those standard terms and conditions, in turn, indicated that each purchase order would be deemed accepted either by WSS' written acceptance or commencement of performance, Dkt. 1-7 at 1;

- WSS accepted each of the purchase orders issued by Siemens Healthineers by commencing performance thereunder, Dkt. 1 at ¶¶ 28, 52.

Accordingly, irrespective of whether the Term Sheet itself is enforceable against WSS, *but see* Section II.C.1 *supra*, Siemens Healthineers' Complaint adequately alleges that WSS contracted to integrate and deliver the units described in those purchase orders and subsequently breached by failing to do so. *See* Dkt. 1 at ¶¶ 52-55. On that basis alone, WSS' Motion must be denied.

## III.    CONCLUSION

For the reasons set forth above, Siemens Healthineers' Complaint alleges the existence of multiple enforceable contractual arrangements, each of which WSS breached through its failure to perform and subsequent repudiation thereof.  Accordingly, the Complaint states a valid cause of action.  This Court should deny WSS' Motion.

DATED this 4th day of April, 2024.

Respectfully submitted,

s/Edward A. Piper
**DAVID H. ANGELI**, OSB No. 020244
david@angelilaw.com
**EDWARD A. PIPER**, OSB No. 141609
ed@angelilaw.com
ANGELI LAW GROUP LLC
121 S.W. Morrison Street, Suite 400
Portland, Oregon 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

**GEORGE D. RUTTINGER**, admitted *pro hac vice*
gruttinger@crowell.com
**ANUJ VOHRA**, admitted *pro hac vice*
avohra@crowell.com
**WILLIAM B. O'REILLY**, admitted *pro hac vice*
woreilly@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Ave. NW
Washington, D.C. 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116

Attorneys for Plaintiff Siemens Medical Solutions USA, Inc.