Damon C. Elder, OSB No. 085313
Email: damon.elder@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
1301 Second Avenue, Suite 3000
Seattle, WA 98101-3808
(206) 274-6400 | Phone

Troy S. Brown, *Admitted Pro Hac Vice*
Email: troy.brown@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
2222 Market Street
Philadelphia, PA 19103-3007
(215) 963-5214 | Phone

Scott L. Mullins, OSB No. 142504
**Mullins Law Office, LLC**
1000 SW Broadway St., Suite 2300
Portland, Oregon 97205
(971) 383-1315 | Phone
scott@slmullins.com

*Attorneys for Defendant WS Acquisition, LLC*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| SIEMENS MEDICAL SOLUTIONS USA, INC., a Delaware corporation,<br><br>                    Plaintiff,<br><br>        v.<br><br>WS ACQUISITION, LLC dba WESTERN SHELTERS SYSTEMS an Oregon limited liability company,<br><br>                    Defendant. | Case No. 6:23-cv-01882<br><br>**DEFENDANT'S REPLY IN SUPPORT OF WS ACQUISITION, LLC'S MOTION TO DISMISS**<br><br>**ORAL ARGUMENT REQUESTED** |

# I.     <u>INTRODUCTION</u>

Plaintiff does not dispute that the parties' Term Sheet provided that, "[u]ntil any []
Subcontract is executed, either party may discontinue discussions or negotiations regarding the
Subcontract at any time with no resulting liability[.]"  Dkt. 1-3, at 3.  Further, Plaintiff does not
dispute that the parties never executed a Subcontract.  Nevertheless, Plaintiff's Complaint and
Response to Defendant WS Acquisition, LLC's ("WSS") Motion to Dismiss are premised on the
exact opposite proposition: namely, that WSS could ***not*** discontinue its negotiations with Plaintiff
without incurring liability—contradicting the express terms of the Term Sheet.

In support of this theory, Plaintiff relies on two erroneous arguments.  ***First***, Plaintiff
contends that the Term Sheet did contain some binding terms, and that WSS somehow breached
those terms when it allegedly failed to perform the work that Plaintiff wanted WSS to perform.
This argument misleadingly cherry-picks from the language of the Term Sheet.  Plaintiff ignores
that the terms described in the Term Sheet as "binding" did not require ***performance*** by WSS, and
instead merely set some (but not all) of the future terms of an anticipated Subcontract.  The very
first sentence of the "binding" terms upon which Plaintiff relies—which Plaintiff misleadingly
omits, Opp. at 1—states explicitly that Plaintiff and Defendant "will agree on certain Subcontract
terms as follows . . . ."  Dkt. 1-3, at 2, Dkt. 1-4, at 1.  Accordingly, Plaintiff's argument that WSS
was required to perform in accordance with these "binding" terms in the absence of a final,
executed Subcontract is ***directly contradicted by*** the language of the Term Sheet itself.

***Second***, Plaintiff asks the Court to ignore the parties' express agreement that "either party
may discontinue discussions or negotiations regarding the Subcontract at any time with no
resulting liability," Dkt. 1-3, at 3, because (1) WSS allegedly attempted to perform work before
the anticipated Subcontract was executed, and (2) Plaintiff subsequently sent WSS some Purchase
Orders unilaterally describing various terms to which WSS never agreed.  Plaintiff relies on a

theory of acceptance-by-performance, but never articulates the elements for such a theory—presumably because those elements are not (and cannot be) satisfied by the allegations in its Complaint.

The inconsistencies between Plaintiff's Response and the Complaint raise more questions than answers, and even though Plaintiff's Response is really akin to an attempted amendment by briefing, the positions are not legally viable, rendering any such amendment futile. At bottom, Plaintiff attempts an amalgamation of offer, acceptance, and breach from several agreements and non-agreements hoping to find some legal recourse against WSS. But the agreements executed by both parties make clear that either party had the right to walk away without liability, and at its core, Plaintiff's complaint is that WSS exercised that right. The Court should find that Plaintiff has failed to state a claim for breach of contract and grant WSS's Motion to Dismiss, with prejudice.

## II.    LEGAL ARGUMENT

The issue before the Court is straightforward: In signing the Term Sheet and Teaming Agreement, did the parties agree that either party could walk away from the teaming arrangement without liability before a Subcontract was executed? To answer this question, the Court must look to what the parties manifested through their writings, the Term Sheet and Teaming Agreement, not through Plaintiff's undisclosed ideas or intents, nor proposals to which there was never mutual assent.

### A.  The Parties Manifested an Intent Not to Be Bound Absent a Subcontract, Which Was Never Executed.

The language in the Teaming Agreement and Term Sheet makes clear that both parties intended **_not to be bound_** to perform absent a Subcontract, which was never executed. To find that the Term Sheet created binding performance obligations immediately upon DLA issuing the

RFO, as Plaintiff insists, would ignore the plain language of both the Teaming Agreement and Term Sheet in several respects.

In assessing whether a contract was formed, Oregon and Pennsylvania courts apply an objective theory of contracts. *See State v. Heisser*, 350 Or. 12, 25–26, 249 P.3d 113 (2011); *Coman v. ACA Compliance Grp.*, 2022 WL 2971935, at *6 (W.D. Pa. July 27, 2022) (citations omitted).[1] "'The law of contracts is not concerned with the parties' undisclosed intents and ideas. It gives heed only to their communications and overt acts.'" *Heisser*, 350 Or. at 25 (quoting *Kitzke v. Turnidge*, 209 Or. 563, 573, 307 P.2d 522 (1957)); *see also Kabil Developments Corp. v. Mignot*, 279 Or. 151, 157, 566 P.2d 505 (1977)).

1. The Term Sheet and Teaming Agreement explicitly established a basis for future negotiations, not immediately binding performance or delivery obligations.

In the Term Sheet, both parties agreed that either party could walk away with no resulting liability.  Dkt. 1-3 at 3 ("Until any such Subcontract is executed, either party may discontinue discussions or negotiations regarding the Subcontract ***at any time with no resulting liability***.") (emphasis added).  Further, the Term Sheet expressly did not contain performance commitments by the parties, and instead provided a basis only for potential future negotiations.  *See id.* at 1 ("The intent of this term sheet (this 'Term Sheet') is to describe, for subcontract negotiation purposes, certain terms of an agreement between [WSS] and [Plaintiff] regarding potential planning, design and integration services, modification/fabrication services, and other materials, supplies and services[.]").  It is indisputable that the ultimate Subcontract (which was never executed), not the Term Sheet, was to define the parties' obligations.  *See id.* at 1 ("[WSS]'s Deliverables for the

---

[1] As the Purchase Orders have no effect, Oregon law applies.  Opp. at 4 n.1.  Nevertheless, as Oregon and Pennsylvania are in accord for the purposes of this motion, the Court need not resolve the issue here.

Project shall ultimately be governed by the terms and conditions of the Subcontract to be negotiated and executed following a contract award by DLA to Siemens.").

2. <u>The Parties manifested their intent not to be bound absent an executed Subcontract, in both the Term Sheet and Teaming Agreement.</u>

The Teaming Agreement was executed five days before the Term Sheet.  In it, the parties made clear that "neither party shall have any right to any reimbursement, payment, or compensation of any kind from each other during the period between the effective date of this Teaming Agreement and the execution of [the] Subcontract." Dkt. 1-2 at 1.  Likewise, the Term Sheet made clear that "[u]ntil any such Subcontract is executed, either party may discontinue discussions or negotiations regarding the Subcontract at any time with no resulting liability." Dkt. 1-3 at 3.

Courts in Oregon and Pennsylvania recognize these agreements not to be bound.  *Logan v. D.W. Sivers Co.*, 343 Or. 339, 353-55169 P.3d 1255 (2007); *see Erection Co. v. W & W Steel, LLC*, 2011 WL 5008325, at *2 (D. Or. Oct. 20, 2011), *aff'd*, 513 F. App'x 664 (9th Cir. 2013); *Philmar Mid-Atl., Inc. v. York St. Assocs. II*, 389 Pa. Super. 297, 301, 566 A.2d 1253 (1989) (applying Pennsylvania law).  Notably, Plaintiff does not address *Erection Co.* or *Philmar*, and does not cite any contrary caselaw where a court ignored the express terms of multiple agreements not to be bound.

3. <u>The Term Sheet section labeled "binding" only provided terms for inclusion in a future Subcontract, not immediate obligations for performance.</u>

Plaintiff cannot dispute that the Term Sheet authorized either party to walk away from their teaming arrangement prior to the execution of a Subcontract.  Nevertheless, Plaintiff argues that the section of the Term Sheet labeled "binding" imposed "immediate obligations upon both parties following DLA's award to Siemens Healthineers of a contract for deployable CT units."  Opp. at

10. This argument is not only wrong, but also misleading, because Plaintiff omits the language of the Term Sheet expressly foreclosing Plaintiff's interpretation.

In Oregon, "[t]he court must, if possible, construe the contract so as to give effect to all of its provisions." *Williams v. RJ Reynolds Tobacco Co.*, 351 Or. 368, 379, 271 P.3d 103 (2011) (citation omitted); *see also LJL Transp., Inc. v. Pilot Air Freight Corp.*, 599 Pa. 546, 560, 962 A.2d 639 (2009) ("[W]e will not interpret one provision of a contract in a manner which results in another portion being annulled.") (quotations omitted). And the court cannot "insert what has been omitted" nor "omit what has been inserted." OR. REV. STAT. § 42.230. Plaintiff's reading is inconsistent with the Term Sheet and omits the very first clause of the section of the Term Sheet labeled "binding."

Specifically, the first sentence in the section of the Term Sheet labeled "binding" expressly stated that the "binding" terms were only intended for inclusion in a future Subcontract, which means they were not immediately operative. Dkt. 1-3 at 2 ("Siemens and Integrator will agree on certain **Subcontract terms** as follows[]") (emphasis added). Plaintiff offers no explanation for how this language can be reconciled with its own interpretation that these "binding" terms were immediately binding performance obligations. To do so would require the Court to impermissibly omit the Term Sheet's description of the "binding terms" as "Subcontract terms" on which the parties would agree in the future.

Plaintiff's attempt to distinguish *Logan* is unavailing. There, the court found that although the parties manifested an intent not to be bound to the final purchase of goods, the parties manifested an intent to be bound by some narrow immediate binding obligations:

> provided, *however,* that *in consideration* of Purchaser's good faith efforts to review the due diligence material provided by Seller, *Seller agrees to be bound* to provide the required due diligence documents to Purchaser within the time required *and* to comply with the Non–Solicitation provision set forth above.

*Logan*, 343 Or. at 346–47, (emphasis supplied by the Court).  But unlike here, those terms called for immediate performance obligations.  The opposite is true here.  Indeed, in this case, finding that the "binding" terms in the Term Sheet created *immediate* binding obligations—rather than simply supplying some of the terms for a future Subcontract—would conflict with the language in the Term Sheet (1) explicitly introducing the "binding" terms as terms that would be included in a Subcontract, Dkt. 1-3 at 1; and (2) guaranteeing that, until a Subcontract was executed, either side could walk away with no resulting liability. *Id*. at 2.  In short, while the binding terms in *Logan* provided for immediate performance, the "binding" terms in the Term Sheet only supplied terms for a future Subcontract.

    4.   <u>DLA's award of the RFO to Siemens did not make the "binding" terms immediate binding obligations.</u>

Plaintiff argues that the "binding" terms became "immediate obligations" when Siemens was awarded the RFO, a theory that is is nowhere mentioned in the Complaint and is flatly contradicted by the terms of the Term Sheet. Opp. at 10.  The Term Sheet made explicitly clear that, *after* Siemens was awarded the RFO, the parties would *negotiate* a final Subcontract to bind the parties.  *See* Dkt. 1-3 at 1 ("***Following*** the award of a purchase order to Siemens for the Project that requires the Deliverables, the parties hereby agree to ***negotiate*** in good faith and execute a formal agreement for a fixed price [Subcontract] containing all final and binding commitments, terms and conditions regarding the Project.") (emphasis added), *id.* ("[WSS]'s Deliverables for the Project shall ultimately be governed by the terms and conditions of the Subcontract to be ***negotiated*** and executed ***following*** a contract award by DLA to Siemens.") (emphasis added).

There is no mention anywhere in the Term Sheet that the terms labeled "binding" would become immediate obligations upon Siemens being awarded the RFO.  And the Court cannot "insert what has been omitted" to reconcile Plaintiff's interpretation.  OR. REV. STAT. § 42.230.

**B.  The Parties Never Agreed to All the Material Terms of a Subcontract.**

The Term Sheet provided that the definitive Subcontract would contain additional material terms to be negotiated after the RFO was issued.  As the parties never agreed to those terms, however, there is no enforceable contract for WSS to perform work.

"[A] valid contract exists only when there is a meeting of the minds and where all terms are either agreed upon or there is a method agreed upon by which open and disputed terms can be settled, such that nothing is left for future negotiation."  *Dalton v. Robert Jahn Corp.*, 209 Or. App 120, 132, 146 P.3d 399 (2006), *review denied*, 342 Or. 416 (2007); *see Bozek v. PNC Bank*, 2020 WL 6581491, at *4 (E.D. Pa. Nov. 10, 2020), *aff'd*, 2021 WL 4240359 (3d Cir. Sept. 17, 2021). Whether parties entered into an agreement depends not just on whether their "minds met," but on whether the parties agreed to the same, express terms and on whether those terms constitute an enforceable agreement.  *See City of Canby v. Rinkes*, 136 Or. App. 602, 611, 902 P.2d 605 (1995).

Here, both parties agreed that the Subcontract would "contain[] all final and binding commitments, terms and conditions regarding the Project."  Dkt. 1-3 at 1. And although the Term Sheet contained some terms that were to be included in the Subcontract, both parties made clear that the terms of the Term Sheet alone were insufficient and that more terms needed to be negotiated and agreed upon before the parties would perform.  *Id.* at 3 (the parties would negotiate "additional terms and conditions . . . that are mutually agreeable to the parties" not expressed in the Term Sheet.).  As no Subcontract was ever executed and no additional terms were agreed on, the Term Sheet on its own cannot be the basis for an obligation to deliver the units.

**C.  Plaintiff's "Course-of-Performance" Argument is Meritless Because it is Inapplicable in this Context and Unsupported by the Allegations in the Complaint.**

Plaintiff's "course-of-performance" argument is erroneous because course-of-performance cannot supersede the express terms of the Term Sheet, which permitted either party to walk away

"at any time with no resulting liability." Dkt. 1-3 at 3. Further, this argument is based on the false premise that the "Binding" terms in the Term Sheet contained binding obligations. *See supra*, at Section A.3. Regardless, the conduct that Plaintiff alleges establishes course-of-performance inconsistent with the Complaint and insufficient to support a plausible claim.

In Pennsylvania, unlike course of dealing evidence, which may be used to supplement or qualify the terms of an agreement, course-of-performance evidence "may be used only to interpret a contract." *J.W.S. Delavau, Inc. v. E. Am. Transp. & Warehousing, Inc.*, 2002 PA Super 336, ¶ 30, 810 A.2d 672 (2002) (citing *Matthews v. Unisource Worldwide, Inc.*, 748 A.2d 219 (Pa. Super. Ct. 2000)). Thus, where the course-of-performance contradicts the unambiguous language of the contract, the court will not allow the course-of-performance to supersede the language of the contract. *See, e.g.*, *Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*, 561 F. Supp. 3d 467, 480 (M.D. Pa. 2021) (citations omitted); 13 PA. CONS. STAT. § 1303(e)(1) ("[E]xpress terms prevail over course of performance[.]"). Similarly, under Oregon contract law, course-of-performance is only relevant after a court determines that a term in a contract is ambiguous as a matter of law. *See Yogman v. Parrott*, 325 Or. 358, 361, 937 P.2d 1019 (1997).

Here, the Court cannot find that WSS "bound itself to perform," Opp. at 14, because the express terms of the Term Sheet permitted WSS to walk away without any resulting liability. Dkt. 1-3 at 3. Plaintiff cannot use WSS's purported course-of-performance to retroactively modify the Term Sheet to eliminate this language that both parties bargained for.

Moreover, the portions of the Complaint Plaintiff cites in its Response do not support the argument that WSS performed in a manner that demonstrates intent to "bind itself." Indeed, Plaintiff cites *Plaintiff's* actions by issuing the Purchase Orders, followed only by the legal conclusion that WSS "accepted by performance." *See* Opp. at 15 ("And after Siemens

Healthineers began receiving orders from DLA, it proceeded to issue corresponding purchase orders to WSS conforming to the price and delivery terms prescribed by the Term Sheet, which WSS in turn accepted by performance without reservation or complaint.").[2] Nor does proposing a project plan timeline, Compl. at ¶ 26, which Plaintiff rejected, *id*. at ¶ 23; Dkt. 1-6 at 1, establish a course-of-performance that WSS intended to alter the terms of the Term Sheet so that it could not walk away without liability.

To the contrary, the Complaint is replete with allegations showing that neither party considered themselves bound to perform. Indeed, the Complaint admits that the parties attempted to negotiate a definitive Subcontract for months *after* Siemens was awarded the RFO. Compl. at ¶¶ 30–39. Plaintiff's own allegation that WSS continued trying to negotiate terms for a definitive Subcontract for seven months demonstrates that WSS did *not* believe there was a final contract obligating WSS to perform, and cannot plausibly support Plaintiff's claim to the contrary. Thus, even if course-of-performance were relevant on this motion (it is not), it would actually militate in favor of dismissal.

**D.   The Purchase Orders Cannot Serve as the Basis for an Enforceable Contract.**

Plaintiff dedicates a single page to arguing that the Purchase Orders stand alone as contracts for the delivery of units, without citing a single legal authority. This argument fails for no less than four independently dispositive reasons.

1.   The Purchase Orders expressly provide that the terms of the Term Sheet and Teaming Agreement are controlling.

Plaintiff argues that the Purchase Orders bound WSS to perform, even if the Term Sheet otherwise established that WSS was free to walk away. Opp. at 16. The Complaint does not

---

[2] Plaintiff's Response appears to blend the two distinct principles of "course-of-performance" and "acceptance-by-performance." WSS addresses Plaintiff's arguments regarding "acceptance-by-performance" *infra*, at Section D.

adequately allege acceptance of the Purchase Orders in the first place, for the reasons discussed below, but there is an even simpler reason to reject Plaintiff's argument. The terms Plaintiff unilaterally incorporated into the Purchase Orders expressly stated:

> [I]f SIEMENS and Seller have entered into a separate agreement with respect to SIEMENS' purchase of the Goods and/or Services, ***then the agreement shall govern SIEMENS' purchase of such Goods and/or Services***; in the event of any inconsistencies between the terms of the agreement and the terms of this Purchase Order, ***the terms of the Agreement shall prevail***.

Dkt. 1-7, at 1 (emphasis added). Thus, to the extent Plaintiff claims the Purchase Orders prohibited WSS from walking away from its teaming arrangement with Plaintiff "with no resulting liability," contrary to the Term Sheet, Dkt. 1-3, at 3, the Purchase Order terms themselves recognize that it is actually the ***Term Sheet*** that prevails. Accordingly, even if the Purchase Order terms had been "accepted" by WSS, as Plaintiff erroneously argues, they would not salvage Plaintiff's Complaint.

    2.  <u>An offer for a unilateral contract can only be accepted by *completed* performance.</u>

Plaintiff alleges WSS accepted the Purchase Orders by commencing performance. *See, e.g.*, Opp. at 16. In so alleging, Plaintiff effectively contends that the Purchase Orders constituted "unilateral" contracts (though Plaintiff never uses that term), which WSS purportedly accepted through performing. Plaintiff offers literally no authority for this proposition, *id*. at 16, and it is unsupported by contract law.

An offer for a unilateral contract invites the other party to accept the offer through performance. *See Moro v. State*, 357 Or. 167, 198–99, 351 P.3d 1 (2015) (explaining the distinction between bilateral and unilateral contracts). But the offeree only accepts the offer for a unilateral contract by *completing* performance. *Id*. a 224 ("[A] unilateral contract is always formed only after the accepting party has completed the performance sought by the offering party"). Until performance is completed, there is no enforceable contract. *See First Home Sav. Bank, FSB v. Nernberg*, 436 Pa. Super. 377, 387, 648 A.2d 9 (1994) ("[A] unilateral contract is not formed and

is, thus, unenforceable until such time as the offeree completes performance."). Here, by contrast, Plaintiff affirmatively alleges that WSS did ***not*** complete performance. Compl. at ¶ 8. As a result, the Purchase Orders were not enforceable contracts and Plaintiff's theory of acceptance-by-performance fails as a matter of law.[3]

3. Plaintiff's acceptance-by-performance argument also fails as a matter of law because Plaintiff alleges WSS commenced performance *before* the Purchase Orders were issued.

Plaintiff's "acceptance-by-performance" argument also fails based on the factual allegations in the Complaint regarding the timing of commencing performance. Opp. at 16.

As noted above, Plaintiff premises its theory of "acceptance-by-performance" on the notion that WSS *commenced* performance after it received the Purchase Orders. *Id.* Even if that were a legally valid premise, however, it would not be supported by the facts alleged in the Complaint. Critically, Plaintiff acknowledges WSS actually began performance *before* any of the Purchase Orders were issued. *Id.* at 15 ("even before receiving any purchase orders from Siemens Healthineers, WSS commenced work pursuant to the Term Sheet"). Accordingly, the notion that WSS accepted the subsequently-issued Purchase Orders by "commencing" performance makes no sense. It is self-evident that an offeree can only accept an offer by performance *after* it is made aware of the offer. *See* Restatement (Second) of Contracts § 51 cmt. a (1981) ("performance completed before the offer comes to the offeree's knowledge does not have reference to the offer, and the terms of the offer are not satisfied by such action"). Plaintiff's admission that WSS commenced performance *before* it knew about the Purchase Orders is an independent reason why Plaintiff's acceptance-by-performance argument fails as a matter of law.

---

[3] Nor can Plaintiff simply add terms that commencing performance is sufficient for acceptance of a unilateral contract. Enforcing such a provision would violate Oregon and Pennsylvania law, including *Moro* and *Nernberg*, by allowing an offeror to bind any offeree to a unilateral contract if it begins, but does not complete, a requested performance. Plaintiff cannot draft around this contractual safeguard.

4. Plaintiff's acceptance-by-performance argument also fails as a matter of law because the Complaint admits that the parties were contemporaneously proposing inconsistent terms.

Finally, Plaintiff's acceptance-by-performance theory independently fails because the facts alleged in the Complaint do not plausibly plead that WSS acted in a manner consistent with acceptance of the Purchase Orders. "In Oregon, it is settled that the acceptance of an offer must correspond to the offer at every point, leaving nothing open for future negotiations." *Arboireau v. Adidas-Salomon AG*, 347 F.3d 1158, 1163 (9th Cir. 2003) (internal quotation and alterations omitted); *Quiles v. Fin. Exch. Co.*, 2005 PA Super 250, ¶ 9, 879 A.2d 281 (2005). Further, under general principles of contract law, "if any provision [of the offer] is added to which the offeror did not assent, the consequence is not merely that the addition is not binding and that no contract is formed, but that ***the offer is rejected, and that the offeree's power of acceptance thereafter is terminated***." 2 Williston on Contracts § 6:11 (4th ed.) (emphasis added). Pursuant to these principles, the factual allegations in the Complaint establish that WSS did ***not*** agree to perform under the terms of the Purchase Orders—through performance or otherwise.

According to the Complaint and the exhibits incorporated therein, the first Purchase Order was issued on June **13**, 2019, and called for a unit to be delivered by June **14**, 2019, *the following day*. Compl. at ¶ 23; Dkt. 1-6, at 1. Thus, even if the Purchase Order was a unilateral offer, as Plaintiff apparently contends, WSS's alleged failure to deliver the unit by June 14, 2019, would constitute a *rejection* of the offer, not acceptance. *See* 2 Williston on Contracts § 6:11 (4th ed.). After June 14, 2019, passed without delivery of a unit, WSS could no longer accept the offer on its stated terms, even if it had wanted to do so, through performance or otherwise. *Id.* This same reasoning applies to the subsequent Purchase Orders. *See* Compl. at ¶ 27; Dkt. 1-8. The August 22, 2019, Purchase Order had a delivery date of August 22, 2019. Dkt. 1-8 at ECF 4. And the August 20, 2019, Purchase Order had a delivery date of October 1, 2019. Dkt. 1-8 at ECF 3. The

Complaint does not allege that WSS delivered the requested units on or before any of those deadlines. As a result, the terms of all of the Purchase Orders were effectively rejected, not accepted.

These issues are magnified by the fact that the Complaint lacks any allegations that WSS completed performance at all, let alone pursuant to the Purchase Orders. Plaintiff's Response cites only two paragraphs in the Complaint in support of its argument that WSS accepted the Purchase Orders by performance. Opp. at 16 (citing Compl. ¶¶ 28, 52). Neither of those two paragraphs contain factual allegations that plausibly state a claim. *First*, Paragraph 52 of the Complaint simply recites a legal conclusion that "WSS accepted each purchase order . . . by performing thereunder[.]" Compl. at ¶ 52. This is not enough to survive dismissal. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient for a complaint to survive a motion to dismiss). *Second*, Paragraph 28 adds nothing to Plaintiff's theory of acceptance-by-performance. This paragraph simply alleges that "WSS repeatedly failed to meet scheduled delivery deadlines" throughout the fall of 2019. Compl. at ¶ 28. But as set forth above, this alleged failure would constitute a *rejection* of the Purchase Orders, not an acceptance followed by a breach.

Plaintiff's theory of acceptance-by-performance is also contradicted by many other allegations in the Complaint, foreclosing a plausible claim as a matter of law. For example, Plaintiff specifically alleges that while WSS was working on the units ostensibly requested by the Purchase Orders, "the Parties were also engaged in negotiations over a definitive subcontract." Compl. ¶ 30. In connection with those negotiations, Plaintiff complains that WSS sent a contemporaneous proposal to Plaintiff that was *inconsistent* with the purchase orders. *Compare* Dkt. 1-6 (copy of June 13, 2019, Purchase Order, <u>setting delivery date of June 14, 2019</u>, *with*

Compl. ¶ 26 (alleging WSS sent a project timeline on June 12, 2019, <u>setting a delivery date of October 14, 2019</u>). Obviously, WSS could not be deemed to have manifested acceptance of the Purchase Orders if it was simultaneously proposing terms that were *inconsistent* with those Orders. *See, e.g.*, *Arboireau*, 347 F.3d at 1163 ("In Oregon, it is settled that the acceptance of an offer must correspond to the offer at every point, leaving nothing open for future negotiations."); *see also Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc.*, 2000 PA Super 387, ¶ 20, 764 A.2d 587 (2000) ("Nor can we accept the trial court's legal conclusion that [offeree] could assent by conduct to an offer it had already expressly rejected in writing."). Plaintiff offers no factual or legal basis for claiming that its unilateral Purchase Orders somehow controlled over the Term Sheet or over the proposals contemporaneously sent by WSS.

In sum, Plaintiff's argument that the Purchase Orders are enforceable contracts fails as a matter of law because the Complaint does not plead facts that would plausibly establish that WSS agreed to perform under the terms of the Purchase Orders, through performance or otherwise.

### III.    <u>CONCLUSION</u>

The parties agreed not to be bound until a Subcontract was executed. No Subcontract was ever agreed upon, and no amendment to the Complaint, by briefing or otherwise, can change these objective facts. Thus, Plaintiff's breach of contract claim must be dismissed with prejudice.

///

///

///

Dated: April 18, 2024

*This Brief Contains 4,557 Words, in*
*Compliance with the Local Civil Rules.*

**MORGAN, LEWIS & BOCKIUS LLP**

By  *s/ Damon C. Elder*
_____
    Damon C. Elder, OSB No. 085313
    1301 Second Avenue, Suite 3000
    Seattle, WA 98101
    Email: damon.elder@morganlewis.com

**MORGAN, LEWIS & BOCKIUS LLP**

By  *s/ Troy S. Brown*
_____
    Troy S. Brown, (*Pro Hac Vice*)
    2222 Market Street
    Philadelphia, PA 19103
    Email: troy.brown@morganlewis.com

**MULLINS LAW OFFICE, LLC**

By  *s/ Scott L. Mullins*
_____
    Scott L. Mullins, OSB No. 142504
    1000 SW Broadway St., Suite 2300
    Portland, OR 97205
    Email: scott@slmullins.com

    *Attorneys for Defendant*