UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| SIEMENS MEDICAL SOLUTIONS USA, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>WS ACQUISITION, LLC dba WESTERN SHELTERS SYSTEMS an Oregon limited liability company,<br><br>Defendant. | Case No. 6:23-cv-01882-MC<br><br>**JOINT RULE 26(F) REPORT** |

Pursuant to Federal Rule of Civil Procedure 26(f) and District of Oregon Local Rule 26, counsel for Plaintiff Siemens Medical Solutions USA, Inc. ("Siemens Healthineers") and Defendant WS Acquisition, LLC, d/b/a Western Shelters Systems ("WSS"), by and through their respective undersigned counsel of record, hereby submit the following Joint Rule 26(f) Report.

**I.     REPORT IN RESPONSE TO FEDERAL RULE OF CIVIL PROCEDURE 26(f)**

   **A.     Nature of the Case (Fed. R. Civ. P. 26(f)(2))**

      **1.     Claims and Defenses**

         **a.     Siemens Healthineers' Statement**

This is a case about WSS' serial breaches of multiple contractual obligations causing Siemens Healthineers to delay its delivery of medical imaging equipment to the U.S. Department of Defense ("DOD"), Defense Logistics Agency ("DLA"), and at considerable additional expense, resulting in damages in the millions of dollars. In March 2018, the parties executed a Teaming Agreement in which they agreed to pursue a DLA contract to supply

computed tomography scanners in mobile containers ("Deployable CT Scanners") to the U.S. Army, Navy, and Air Force. Under the Teaming Agreement, Siemens Healthineers was the prime contractor, and WSS was the subcontractor responsible for integrating Siemens Healthineers' CT scanners into the mobile container units. The parties also executed a Term Sheet that set forth binding pricing, payment, technical and delivery terms and conditions under which Siemens Healthineers would—and eventually did—issue purchase orders to WSS for the integration services necessary to fulfill orders placed by DLA and the DOD. The Term Sheet also contemplated the delivery of a unit for First Article Testing ("FAT"). Siemens Healthineers also issued to WSS multiple Purchase Orders. WSS did not object to any of the terms and conditions in any of the Purchase Orders.

Despite its obligations under the parties' agreements, WSS failed to produce even a single integrated Deployable CT Scanner. As a result of WSS' breaches and its repudiation of the parties' agreements, including the Term Sheet and the Purchase Orders, Siemens Healthineers has incurred damages totaling more than $10 million.

        **b.**      **WSS' Statement**

WSS disputes Siemens' claims, asserts various affirmative defenses, and has pled its own counterclaims for breach of contract and breach of the duty of good faith fair dealing. WSS contends that the parties entered into a Teaming Agreement and a related Term Sheet that provided for negotiations for a future Subcontract, neither of which created immediate performance obligations absent the finalization of a Subcontract. The Term Sheet also provided that either party could terminate the teaming arrangement at any time without liability, prior to the execution of a Subcontract. WSS contends that it acted in accordance with the parties' agreements in good faith, but that Siemens failed to act in good faith during the Subcontract

negotiations, then terminated the teaming arrangement in bad faith, causing WSS to incur at least $684,053 in damages.

### 2. Jurisdiction and Venue

It is undisputed that this Court has subject matter jurisdiction over this matter and personal jurisdiction over the parties and that venue for this action is proper in the District of Oregon pursuant to 28 U.S.C. §§ 1332 and 1391(b)(1).

## B. Discovery Plan (Fed. R. Civ. P. 26(f)(3))

### 1. Initial Disclosures (Fed. R. Civ. P. 26(f)(3)(A))

The Parties do not agree to forego the disclosures required by Fed. R. Civ. P. 26(a)(1). *See also* L.R. 26-2. The Parties stipulate and thereon agree pursuant to Fed. R. Civ. P. 26(a)(1)(C) that they will serve Initial Disclosures by no later than August 30, 2024.

### 2. Discovery Subjects, Timing, and Phasing (Fed. R. Civ. P. 26(f)(3)(B))

The Parties submitted a joint status report on August 5, 2024, which provided the Parties' proposed case deadlines, and which bifurcated fact discovery and expert discovery.

### 3. Disclosure, Discovery, and Preservation of ESI (Fed. R. Civ. P. 26(f)(3)(C)

The Parties generally agree to cooperate in determining whether phasing of ESI discovery is appropriate and will negotiate a Stipulated Order Regarding the Discovery of ESI. At a minimum, the Stipulated Order will include limits on the number of search terms and custodians, the format of production, and the metadata required to be produced.

### 4. Privilege and Other Protection (Fed. R. Civ. P. 26(f)(3)(D))

#### a. Stipulated Protective Order

The Parties intend to negotiate and expect to seek entry of a stipulated Protective Order to facilitate the exchange of confidential information in discovery.

In addition, the Parties agree that, pursuant to Federal Rule of Civil Procedure 26(b)(4)(b), no draft expert reports, notes, outlines, or disclosures leading up to a final expert report or declaration are discoverable, in whatever form.

In addition, where a party retains independent consultants or experts to provide technical or consulting services or to give testimony with respect to the subject matter of this action, the following materials will be deemed to be privileged materials or materials otherwise protected from production based on a claim of privilege (attorney-client, work product, or other privilege) and thus not discoverable:

1. Correspondence, conversations, or other communications between such independent consultants or experts and a party or its outside counsel, unless the conversations or communications are relied upon by such experts in formulating opinions that are presented in reports or trial or deposition testimony in this case;

2. Drafts of expert reports, declarations, or any other materials drafted by or for such independent consultants or experts regarding the subject matter of this action; and

3. Communications between such independent consultants and experts and a party or its outside counsel that are related to drafts and/or revisions of expert reports, declarations, or other materials drafted by or for such independent consultants or experts, or that are related to the preparation to testify at a hearing, trial, or deposition in this action.

### b. Privilege Logs

The Parties agree that privilege logging under Rule 26(b)(5) will not be required for:

1. Privileged communications between the Parties and their respective litigation counsel, their experts, and privileged communications and documents that are covered by a common interest privilege;

2. Work product created by the Parties' respective litigation counsel;

3.      Privileged communications occurring, or work product by in-house or litigation counsel created, on or after December 13, 2023, the date of the filing of the Complaint.

        **c.**      **Inadvertent Production of Privileged Materials**

The Parties agree that if a producing party, through inadvertence, produces or provides discovery that it reasonably believes is privileged or otherwise immune from discovery, the producing party may claw back the protected document by making a written request to the receiving party specifically identifying the protected document. The receiving party shall then destroy or return to the producing party such inadvertently produced materials and all copies thereof within five (5) calendar days of receipt of the written request. The inadvertent production of privileged documents does not constitute a waiver of the privilege, and the receiving party may not bring a motion to compel based on any alleged waiver caused by the inadvertent production. Return of the materials shall not constitute an admission or concession, or permit any inference, that the returned materials are, in fact, properly subject to a claim of privilege or immunity from discovery.

When a producing party gives notice that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the receiving parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in any discovery order that provides for production without prior privilege review pursuant to Federal Rule of Evidence 502(d) and (e).

        **5.**      **Limitations on Discovery (Fed. R. Civ. P. 26(f)(3)(E))**

        **a.**      **Interrogatories**

The Parties agree that the limits of Federal Rule of Civil Procedure 33 should apply without alteration.

      **b.**      **Depositions**

The Parties agree that the limits of Federal Rule of Civil Procedure 33 should apply without alteration, and that third-party depositions count against the total limit of depositions provided by Federal Rule of Civil Procedure 33.

The Parties also agree that expert depositions should not count against the total limit of depositions. The Parties will seek to negotiate reasonable limits on expert depositions at an appropriate time.

The Parties agree that they will discuss reasonable 30(b)(6) deposition limits upon serving a Notice of Deposition Pursuant to Federal Rule of Civil Procedure 30(b)(6), including whether the 30(b)(6) deposition will count as one or more depositions under the limits imposed by Federal Rule of Civil Procedure 30(a)(2)(A)(i) and any hours limits for the depositions of each corporate designee.

    **C.**    **Protective Orders**

*See above* at Section I.B.4.a.

    **D.**    **Case Schedule**

The parties filed their Joint Status Report on August 5, 2024, which included a Proposed Revised Case Schedule. D.I. 40. The Court issued an Order adopting the Parties' proposed schedule. D.I. 42.

**II.**    **REPORT IN RESPONSE TO LOCAL RULE 26**

    **A.**    **Electronically Stored Information (ESI) (L.R. 26-1(2))**

As discussed above, pursuant to Local Rule 26-1(2), the Parties confirm that they have generally discussed discoverability of ESI and generally agree to cooperate in determining

whether phasing of ESI discovery is appropriate and to negotiate a Stipulated Order Regarding the Discovery of ESI. At a minimum, the Stipulated Order will include limits on the number of search terms and custodians, the format of production, and the metadata required to be produced.

  The Parties are not aware of any issues regarding the preservation of ESI and confirm that they have taken steps to preserve discoverable information, including ESI, through the issuance of litigation hold notices.

Dated: August 30, 2024

| | |
|---|---|
| **ANGELI LAW GROUP LLC** | **MORGAN, LEWIS & BOCKIUS LLP** |
| By  *s/ Edward A. Piper*<br>Edward A. Piper, OSB No. 020244<br>121 SW Morrison St., Suite 400<br>Portland, OR 97204<br>Email: ed@angelilaw.com | By  *s/ Damon C. Elder*<br>Damon C. Elder, OSB No. 085313<br>1301 Second Avenue, Suite 3000<br>Seattle, WA 98101<br>Email: damon.elder@morganlewis.com |
| **CROWELL & MORING LLP** | **MORGAN, LEWIS & BOCKIUS LLP** |
| By  *s/ Anuj Vohra*<br>Anuj Vohra, (*Pro Hac Vice*)<br>George David Ruttinger, (*Pro Hac Vice*)<br>William Benjamin O'Reilly, (*Pro Hac Vice*)<br>1001 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>Email: avohra@crowell.com<br>gruttinger@crowell.com<br>woreilly@crowell.com<br><br>*Attorneys for Plaintiff* | By  *s/ Troy Brown*<br>Troy Brown, (*Pro Hac Vice*)<br>2222 Market Street<br>Philadelphia, PA 19103<br>Email: troy.brown@morganlewis.com<br><br>**MULLINS LAW OFFICE, LLC**<br><br>By  *s/ Scott L. Mullins*<br>Scott L. Mullins, OSB No. 142504<br>1000 SW Broadway St., Suite 2300<br>Portland, OR 97205<br>Email: scott@slmullins.com<br><br>*Attorneys for Defendant* |